ALEXANDER H. MILLER, Assignee of PATTERSON and VAN
DYKE, Plaintiff in error, *v.* SAMUEL W. BLACK, Assignee
in bankruptcy of JAMES M. BOYLE, Defendant in error.

### IN ERROR.

A. being indebted to B., on the 3d day of November, 1842, gave his judgment bond with-
out stay of execution to B. for the amount of such indebtedness. B., on the 23d day
of November, 1842, entered up a judgment thereon; and on the same day, A. pre-
sented his petition to the District Court of the United States, for the benefit of the
bankrupt law; whereupon, the court appointed the 26th day of December following,
for the hearing of A. and his creditors. But in the mean time, to wit, on the 9th day
of December, 1842, B. issued an attachment execution on his judgment, under which
the sheriff attached various debts due and owing to A.

*Held*, that on a case stated containing these facts, the attachment was good; and that the
assignment took effect only from the date of the decree, and had no relation back to the
presentation of the petition. But had the question been submitted to a jury, and had it
been shown, that the debtor, at the time he gave the judgment, was unable to pay his
debts and go on with his business; the jury might probably have inferred, that the
judgment was given in contemplation of bankruptcy and for the purpose of giving a
preference to the plaintiff therein over his other creditors, so as to have rendered it void
under the express provisions of the bankrupt law, in which case the attachment exe-
cution would have been set aside.

ERROR to the District Court of Alleghany county.

The case below was this. A rule, on behalf of Samuel W. Black,
assignee in bankruptcy of James M. Boyle, who had been duly de-
clared a bankrupt, was granted by consent, to show cause why an
attachment execution, &c., issued at the suit of one Alexander H. Mil-
ler, assignee of Patterson and Van Dyke, against James M. Boyle, on
a judgment entered up upon a judgment bond without stay of execu-
tion, given by the latter to the former, should not be discharged, and
all proceedings thereon set aside. It was also agreed, that a case
should be stated for the opinion of the court, and that either party
should be at liberty to sue out a writ of error.

The following are the material parts of the case stated:

On the 3d day of November, 1842, James M. Boyle executed a
judgment bond without stay of execution, to Alexander H. Miller,
assignee of Patterson and Van Dyke, in the penal sum of $5258, con-
ditioned for the payment of $2629 07.

On the 23d day of November, 1842, judgment was entered up on
said bond in the District Court of Alleghany county; and on the same
day, James M. Boyle presented his petition to the District Court of the
United States, for the Western District of Pennsylvania, for the benefit

of the bankrupt law.   The court, thereupon, appointed the 26th day of December following, for the hearing of the petitioner and his creditors; and on the said 26th day of December, 1842, A. by a decree of the court, duly made and registered, was declared a bankrupt, and Samuel W. Black appointed the assignee.   Previously however to the decree, to wit, on the 9th day of December, 1842, Miller, the plaintiff in the judgment above named, caused a writ of attachment, execution, &c., to be issued, directed to the sheriff of Alleghany county, who returned in effect, that he had served said writ on James M. Boyle, the defendant, and upon divers persons named therein as garnishees, prior to the 26th day of December, 1842.   On the      day of January, 1843, judgment by default was entered against certain of the garnishees, who were served and failed to appear.

It was agreed, if under this state of facts this court shall be of opinion, that the aforesaid decree of the United States District Court, made on the 26th day of December, 1842, relates back to the time of the presentation of said petition and the order of the court made thereon, to wit, the 23d day of November, 1842 ; and that all the property and rights of property of the bankrupt were vested in the assignée appointed by said court by relation from the said period ; then this rule shall be made absolute.

If, on the other hand, the court should be of the opinion, that the property and rights of property of the bankrupt were and remained subject to attachment, levy, or other judicial proceedings at the instance of creditors, until the time or date of the decree in bankruptcy aforesaid, (December 26, 1842,) or that the title of the assignee does not relate back to the time of the presentation of said petition ; then this rule to show cause, entered in this case, shall be discharged, and the court shall make such order respecting the costs of this proceeding, as to them shall appear just and proper.

The court below ruled as follows:

"This case was submitted without argument, and the rule made absolute according to the conditions of the case stated."

Error assigned:  The court erred in making the rule absolute in this case.

*Hampton*, for plaintiff in error, cited the 3d section of the Bankrupt Law, passed August 29th, 1841 ; Owen on Bankruptcy, p. 50, in Appendix ; and 15th section of Bankrupt Act, to the point, that under the provisions of this section, the bankrupt was not deemed to be divested of the right and title in his property, until the decree of the court declaring him a bankrupt.   To the same point he also cited 5 Law Rep.

392; Id. 136, 424; 1 Law Journal, 145; Id. 302, 323, 330, 331, and 332.

*Black*, for defendant in error, cited 5 Law Rep., of Nov. 1842, p. 299, to show that the judgment itself was an act of bankruptcy, and void as against the other creditors. 5 Law Rep., of June, 1842, pp. 55 and 357.

The opinion of the court was delivered by KENNEDY, J.

The attachment which is sought to be set aside in this case, was issued as a substitute for an execution, under our act of Assembly, by Alexander H. Miller, assignee of Patterson and Vandyke, upon a judgment previously entered on the 23d day of November, 1842, in the District Court of Alleghany county, against James W. Boyle. The judgment was obtained or entered by virtue of a bond and warrant of attorney, executed and given by Boyle on the 3d day of that month. On the 23d of the month, the same day on which the judgment was entered, Boyle, by his petition presented to the District Court of the United States, held at Pittsburgh, for the Western District of Pennsylvania, applied for the benefit of the bankrupt law; whereupon, the court appointed the 26th day of December then next following for a hearing of him and his creditors, and directed that he should give at least twenty days' previous notice thereof to his creditors, by a publication in two of the newspapers of Pittsburgh, as specified in the order. This was accordingly done, and on the 26th day of December, 1842, after a hearing by the said court, was regularly declared a bankrupt. But previously to this, on the 9th day of December, 1842, the plaintiff below sued out the writ of attachment, here sought to be set aside, upon his judgment, by virtue whereof, the sheriff, to whom the writ of attachment was directed and delivered for the purpose of being executed, attached various debts owing by divers persons to the said James W. Boyle, giving them due notice thereof as garnishees, all which was done before the said 26th day of December, 1842. The only question presented by the facts thus stated, is, whether the plaintiff in the judgment below is entitled to the benefit of his attachment. Fraud is not alleged, so that the judgment in his favour below and the proceeding had upon it must be regarded as bonâ fide and fair; and also, as available, unless rendered otherwise by the bankrupt law, or some provision contained in it.

The only part of the bankrupt act which appears to militate against the judgment and the proceedings had upon it in this case, is contained in the second section, which provides, "that all dealings and trans-

actions by and with any bankrupt, bonâ fide made and entered into more than two months before the petition made and filed against him, or by him, shall not be invalidated, or affected by the act : Provided, that the other party to any such dealings, or transactions, had no notice of a prior act of bankruptcy, or of the intention of the bankrupt to take the benefit of this act." By a fair construction of the provision just recited, the natural, and indeed necessary inference would seem to be, that Congress intended to make all dealings and transactions by and with any bankrupt invalid, though made and entered into bonâ fide, if calculated to give the party with whom such dealings or transactions were had, a preference over the other creditors of the bankrupt ; unless made or entered into more than two months before the petition made and filed against or by him ; and, even then, not to be valid, unless the party with whom such dealing or transaction was had, had no notice, at the time, of a prior act of bankruptcy committed by the bankrupt, or knowledge that he intended to take the benefit of the bankrupt act. It cannot well be denied, that the words "all dealings and transactions," might be so construed as to comprehend and embrace the judgment given to the plaintiff below, as also the proceedings had upon it ; were it not for the provision in the beginning of the same section, which would seem to exclude this construction, by providing specifically, that " all payments, *securities,* conveyances, or transfers of property or agreements made or given subsequently to the time when the act was to come into operation, by any bankrupt in contemplation of bankruptcy, and for the purpose of giving any creditor, endorser, surety, or other person, any preference or priority over the general creditors of such bankrupt, should be deemed utterly void, and a fraud upon the act." The judgment given to the plaintiff below, being most clearly a *security,* comes, therefore, both within the letter and the meaning of the clause just referred to, and recited ; and was given only twenty days before the defendant in it made and filed his petition for the benefit of the act, and without stay of execution, as it would seem. These matters, taken in connection, if the fact were so and could have been shown, that the bankrupt was insolvent at the time, and unable to go on with his business, would most likely have been sufficient to satisfy a jury, that it was *executed* in contemplation of bankruptcy, for the purpose of giving the plaintiff below a preference or priority over the other creditors of the bankrupt ; which, if so, would doubtless render the judgment void as against them. But, as this is not admitted by the case stated, nor found to be so by a jury, the court, I am inclined to think, cannot say, from all that is in the case stated, that the judgment bond was executed in *contemplation of bankruptcy, for the purpose of* giving a prefer-

ence to the other creditors of the bankrupt, and pass upon it as if it were done with that view. But seeing it was executed according to the case as stated, within less than two months before the bankrupt made and filed his petition for the benefit of the bankrupt act, it becomes the duty of the court to say, whether it is not void, under the operation of the bankrupt law, as against the other creditors of the bankrupt, and particularly under the provision first recited above. Sir Samuel Romily's act, 46 Geo. 3, cap. 135, sec. 1, contains a provision somewhat similar in its terms. It is thereby enacted, "that all contracts and transactions by and with any bankrupt, bonâ fide made or entered into, more than two calendar months before the date of the commission, shall, notwithstanding any prior act of bankruptcy committed by such bankrupt, be good: provided, the person so dealing with such bankrupt had not, at the time, notice of any prior act of bankruptcy having been committed by such bankrupt, or that he was insolvent, or had stopped payment." In an anonymous case, in note, 1 Camp. Rep. 492, where a suit was brought by the endorsee of a bill of exchange, drawn by J. S. more than two months before a commission of bankruptcy sued out against the drawer, payable to his own order, and delivered at the time to the plaintiff, but not endorsed until some time afterwards, within two months of the date of the commission; it was held, that the property in the bill passed by the delivery of it to the plaintiff, and not by the endorsement; and the delivery being more than two months before the date of the commission, it was therefore good under the provision of the act just recited. But it is plain, from the decision of the court, that the bill would have been held void by the operation of the act, if it had been drawn and delivered within two calendar months anterior to the date of the commission. So it was held in Fearnley v. Wright, 1 Bing. N. C. 446, that a bankrupt having, within two months before the fiat, deposited chattels by way of pledge, in consideration of an advance of money, that the transaction, though bonâ fide, and without notice of an act of bankruptcy, was not valid under the 81st sec. of the bankrupt act of Geo. 4, cap. 16, which enacts "that all conveyances by, and all contracts and other dealings and transactions by and with any bankrupt, bonâ fide made and entered into, more than two calendar months before the date of issuing of the commission against him, &c., shall be valid, notwithstanding any prior act of bankruptcy by him committed; provided, the person or persons so dealing with such bankrupt, &c., had not, at the time of such conveyance, contract, dealing or transaction, notice of any prior act of bankruptcy by him committed." And held also, that the transaction was not protected by the section immediately following, which declares, "that all payments

really and bonâ fide made, or which shall thereafter be made by any bankrupt, or by any person on his behalf, before the date and issuing of the commission against such bankrupt, (such payment not being a fraudulent preference of such creditor,) shall be deemed valid, notwithstanding any prior act of bankruptcy by such bankrupt committed; and all payments really and bonâ fide made, or which shall thereafter be made to any bankrupt before the date and issuing of the commission against such bankrupt, shall be deemed valid, notwithstanding any prior act of bankruptcy by such bankrupt committed; and such creditor shall not be liable to refund the same to the assignees of such bankrupt: provided, the person so dealing with the said bankrupt had not, at the time of such payment by or to such bankrupt, notice of any act of bankruptcy by such bankrupt committed." But in Cowie v. Harris, 1 Moody & Malkin, 141, where a commission issued on the 14th of May, a dealing on the 14th of March preceding was held good and valid, because more than two calendar months before the issuing of the commission.

So Chief Justice Tindal, in delivering the opinion of the court in the case of Skey v. Carter, 11 Meeson & Welsby, 573, says, "the effect of the 81st section of the act of 6 Geo. 4, c. 16, taken by itself, would be to protect all executions, whether before or after an act of bankruptcy, under which there had been a seizure more than two calendar months before the fiat, when the execution creditor had no notice of a prior act of bankruptcy. This 81st section of 6 Geo. 4, c. 16, in addition to what is stated above as contained in it, has also the following words: "and all executions and attachments against the lands and tenements, or goods and chattels of such bankrupt, bonâ fide executed or levied more than two calendar months before the issuing of such commission, shall be valid, notwithstanding any prior act of bankruptcy by him committed: provided the person or persons at whose suit, or on whose account, such execution or attachment shall have issued, had not, at the time of executing or levying such execution or attachment, notice of any prior act of bankruptcy by him committed."

Our act of Congress contains no such clause as the one just recited, in which *executions* or *attachments* are specifically mentioned; and hence a question may arise, whether they ought to be considered as included in the words "all dealings and transactions," contained in the first clause of the act of Congress already recited. If it be that they ought not to be regarded as included, then the proper conclusion would seem to be, that the execution or attachment in the case before us ought not to have been set aside, but, on the contrary, supported, and the rule for setting aside the same discharged. For it is

clear, according to the terms of the 3d section of the act, that no claim
or right of property to the debt owing to the bankrupt which was
attached, vested in the plaintiff, the assignee, before the decree of the
court was had, declaring the defendant named in the attachment a
bankrupt. The words of the section in this respect are, "that all the
property, and rights of property, of every name and nature, and
whether real, personal, or mixed, of every bankrupt, except as is here-
inafter provided, who shall, by a decree of the proper court, be de-
clared to be a bankrupt within this act, shall, by mere operation of law,
ipso facto, *from the time of such decree*, be deemed to be *divested out
of such bankrupt*, without any other act, assignment, or other convey-
ance whatsoever; and the same shall be *vested, by force of the same
decree, in such assignee*, as from time to time shall be appointed by the
proper court for this purpose; and the assignee so appointed shall be
*vested* with all the rights, titles, powers, and authorities to sell, manage,
and dispose of the same, and to sue for and defend the same, subject to
the orders and directions of such court, as fully and to all intents and
purposes, as if the same were vested in, or might be exercised by such
a bankrupt, *before or at the time of his bankruptcy declared as aforesaid.*"
On the 9th of December, 1842, the attachment was issued and exe-
cuted by the sheriff prior to the 26th of that month : the day on which
the defendant in it was declared by the court a bankrupt.

The execution of the attachment must be considered, I apprehend,
as creating a lien, at least, on the debts attached by virtue thereof, in
favour of the plaintiff named in it; and, having been executed before
the defendant named in it was declared a bankrupt, cannot be affected
by the subsequent decree of bankruptcy. Indeed, by the latter clause
of the second section, the lien created by the execution of the attach-
ment appears to be protected, which declares, "that nothing in this
act contained shall be construed to annul, destroy, or impair, any *liens*,
mortgages, or other securities, on property real or personal, which may
be *valid by the laws of the States respectively*, and which are not incon-
sistent with the provisions of the second and fifth sections of this act."
Seeing it does not appear by the case stated, that the plaintiff in the
attachment had any notice at the time he sued out the same, or at the
time when it was executed, that the defendant in it had applied for the
benefit of the bankrupt law, it would be unjust that he should be sub-
jected to the costs of having it sued out and executed without deriv-
ing any benefit from it; for, unless it be valid, this injury would inev-
itably follow to the plaintiff in the attachment. But it may be said,
and seems to have been thought by some, that the filing of the petition
by the bankrupt for the benefit of the act, and the order of the court

thereon, ought to be considered constructive notice, at least, thereof, to the plaintiff in the attachment. But constructive notice may work great injustice in many instances, where there has been no actual notice, and therefore, perhaps, ought not to be much favoured. It is certainly not declared by the act, that the filing of the petition, and the order of the court thereon, shall be considered notice to the creditors of the bankrupt of his intention to take the benefit of the bankrupt act; nor is there any reason why it should, because it is a voluntary proceeding on his part, and he may not go through with it, but discontinue it without doing so, after having induced his creditors to suspend, for a time, all proceeding against him to enforce the payment of their claims, which may be all that he intended. But it was ruled by the King's Bench, in the case of Sowerby *v.* Brooks, 4 Barn. & Ald. 523, on writ of error reversing the judgment of the Common Pleas, that the issuing of a commission of bankruptcy was not, of itself, sufficient notice to all the world of a prior act of bankruptcy, and, therefore, if a payment was made of a debt to a bankrupt, after the issuing of the commission, and before the party paying had any *actual* knowledge of the bankruptcy, such payment was good. So in Hithcox *v.* Sedgwick, 3 Sug. Vend. 467, 468, it was adjudged by the House of Lords, that a commission of bankruptcy was not, of itself, notice to a purchaser, and accordingly reversed the decision of the Lords Commissioners Trevor and Hutchins, holding against Lord Commissioner Rawlinson, that a commission of bankruptcy was notice to a purchaser. See also Lord Henly on Bankruptcy, 259 to 262, where the subject is noticed, and it is shown that the issuing of a commission of bankruptcy is not, and ought not to be, regarded as notice, unless made so by the express terms of the act. But even supposing the plaintiff had had actual notice of the bankrupt's having presented his petition for the benefit of the bankrupt law, I do not see why that should have prevented him from suing out execution upon his judgment, and having the amount thereof made out of the effects of the bankrupt.

Although the bankrupt had presented his petition for the benefit of the bankrupt law, he was still invested, notwithstanding, with his rights to all his property, the same as before presenting his petition, and consequently it remained liable, as before, to be taken in execution for the payment of his debts, until he was declared a bankrupt, and an assignee was appointed. Before this took place, however, the attachment sued out on the judgment, in the nature of an execution, was executed, and a lien thereby created in favour of the plaintiff, upon the effects of the bankrupt so attached, which could not be set aside or defeated by the subsequent decree of the court, declaring the de-

fendant in the attachment a bankrupt, and appointing the plaintiff in error here his assignee. It being a lien, created under a legal proceeding according to the laws of the state, and in nowise inconsistent with the provisions of the bankrupt law, is in express terms protected by the latter part of the second section thereof. The application of the bankrupt for the benefit of the act being voluntary, he was not bound to pursue it, so as to have himself declared a bankrupt, and divested of his rights to his property. He could, at any stage of the proceeding previously thereto, have discontinued it, and thus have baffled, for a time at least, the efforts of his creditors, even of judgment creditors, to collect their debts, if it were to be held that judicial process could not be issued against, and executed upon, the property or effects of one against whom judgments were had for debts owing by him, during the pendency of his petition for the benefit of the bankrupt laws. This would certainly be unjust, and could not, I apprehend, have been intended by the makers of the law. For this reason I would also hesitate to say, as Mr. Justice Story seems to have thought, that the decree by relation covered all the property which the bankrupt had at the time of filing his petition, or during any period of the interim. 5 Law Rep. 307, 308. But the words of the act put an end to all question, in my mind, on this point, and show most clearly and unequivocally that the decree has not, and could not have been intended to have such relation. The words of the law, as recited above, show most conclusively, to my mind, that they are only susceptible of one construction, which is, that the divesting and vesting of the property must necessarily be confined to the date of the decree. This construction has been given to them by Judge Prentiss of the District Court of the United States for Vermont, 5 Law Rep. 393. Also, by Judge Dickerson of the District Court of the United States for New Jersey, 5 Law Rep. 136. And again, by Judge Randall of the District Court of the United States for the eastern district of Pennsylvania, 1 Law Journal, 145, which was approved and confirmed by Mr. Justice Baldwin, late of the Supreme Court of the United States, in Dudley's case, 1 Law Jour. 302, 330, 331, 332.

We, therefore, think the judgment of the court below ought to be reversed, and accordingly reverse it; thus discharging the rule in the court below, granted to show cause why the writ of attachment, and the proceedings thereon, should not be discharged. And further order and direct that the costs of the rule, and also all proceedings had thereon since, be paid by Samuel W. Black, the assignee in bankruptcy; and the cause remanded to the court below to proceed therein.